UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MARSHALL WEXLER,

                Plaintiff,

-against-

RELIANT CAPITAL SOLUTIONS, LLC and
TRANS UNION, LLC,

                Defendants.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**
19-CV-01779 (DRH)(AKT)

**APPEARANCES:**

**For Plaintiff:**

The Law Offices of Shimshon Wexler, PC
216 West 104th Street, #129
New York, New York 10025
By:    Shimshon Wexler, Esq.

**For Defendant Reliant Capital Solutions, LLC:**

Barron & Newburger, P.C.
30 South Main Street
New City, New York 10956
By:    Arthur Sanders, Esq.

**HURLEY, Senior District Judge:**

      Plaintiff Marshall Wexler ("Plaintiff") brought this action for violations of the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA") against Defendants Reliant Capital Solutions, LLC ("Reliant") and Trans Union, LLC ("Trans Union")[1]. Presently before the Court is Reliant's motion to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motion is denied in part and granted in part.

---

[1] Trans Union was dismissed from this action on August 5, 2019.

## BACKGROUND

The following allegations are taken from the Second Amended Complaint ("SAC") and assumed true for purposes of this motion, unless otherwise noted.

In or around December 2018, Plaintiff "disputed through the Consumer Financial Protection Bureau [("CFPB")] portal [an] erroneous Reliant tradeline which was on his Trans Union credit report." (SAC [ECF No. 17] ¶ 2.) "The Reliant tradeline arose due to accounting errors of crediting plaintiff's law school account when transactions should have caused a debit and debiting plaintiff's law school account when the transaction should have caused a credit." (*Id.* ¶ 7.) Reliant is an Ohio "furnisher of information" as defined by the FCRA and a "debt collector" as defined by the FDCPA. (*Id.* ¶ 16; Def.'s Mem. in Supp. [ECF No. 23-1] at 1.) Trans Union is an Illinois consumer reporting agency. (SAC ¶ 17.)

Trans Union notified Reliant of Plaintiff's dispute. (*Id.* ¶ 3.) On January 18, 2019, Trans Union sent Plaintiff a letter stating that it "asked the company reporting the information you disputed to do all of the following:

1. Review relevant information we sent them, including any documents you gave us as part of your dispute.

2. Investigate your dispute and verify whether the information they report is accurate.

3. Provide us a response to your dispute and update any other information.

4. Update their records and systems if necessary." (*Id.* ¶ 3.)

Plaintiff alleges that, nonetheless, Reliant "failed to conduct a reasonable investigation into Plaintiff's dispute" and "to notify Trans Union that it should notate the account as disputed." (*Id.* ¶¶ 4-5.) "After the results of the investigation failed to show that the Reliant tradeline was erroneous, Reliant did not notate that the account was disputed." (*Id.* ¶ 6.)

In a letter to Plaintiff dated January 24, 2019 ("letter"), Reliant indicated that Plaintiff owed Touro College $638.50. (SAC Attachment.[2]) The letter, which appears to have been sent in response to an inquiry from Plaintiff ("Enclosed is the documentation you requested regarding the account(s) referenced below"), states at the bottom of the page "[t]his is an attempt to collect a debt." (SAC Attachment.)

As of the filing of this lawsuit, the tradeline is no longer showing on Plaintiff's Trans Union credit report and "Reliant has admitted it had made a mistake."[3] (SAC ¶ 8.) Nonetheless, Plaintiff alleges that he suffered emotional distress and "a loss of time from dealing with the erroneous credit report." (*Id.* ¶¶ 9-10.) Additionally, Plaintiff alleges he did not apply to rent certain apartments as "a result of the false tradeline." (*Id.* ¶ 8.)

## DISCUSSION

*I.     Rule 12(b)(6) Legal Standard*

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action, a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere

---

[2] Plaintiff did not assign an exhibit number or letter to the attached letter. The Court therefore refers to it as the "SAC Attachment".
[3] The SAC is silent as to the exact date the tradeline was removed from Plaintiff's credit report.

conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig*., 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

I.     FCRA

Plaintiff alleges that Reliant violated the FCRA "by failing to reasonably investigate Plaintiff's dispute when Trans Union forwarded Plaintiff's dispute of his Reliant account," "review all relevant information in Plaintiff's dispute forwarded by Trans Union," and "notate that the account was disputed" as required by 15 U.S.C. § 1681s-2(b). (SAC ¶¶ 25, 28-30.) Reliant argues that it had no duty to carry out any of the activities listed in section 1681s-2(b)

because Plaintiff did not directly notify Trans Union of his dispute in accordance with 15 U.S.C. § 1681i, but instead filed his complaint through the CFPB.

Section 1681s-2(b) states: "After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall a) conduct an investigation with respect to the disputed information; b) review all information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title; c) report the results of the investigation to the consumer reporting agency…"

The parties dispute whether Plaintiff properly noticed Reliant in accordance with section 1681i(a)(2), which states in relevant part: "Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person." Section 1681i(a)(1), referenced in section 1681i(a)(2), states in relevant part: "[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file…"

Reliant contends that it would only be obligated to perform the actions outlined in 1681s-2(b) "if Plaintiff disputed the tradeline directly with Trans Union or a reseller." (Def.'s Mem. in Supp. at 5.) Plaintiff alleges that he disputed the tradeline through the CFPB portal, which

"constitutes a dispute directly with Trans Union" because it "enables a customer to submit a dispute directly to Trans Union in a manner that is more user friendly to a consumer." (Pl.'s Mem. in Opp. [ECF No. 24] at 5.)

Reliant cites a number of cases in its reply brief for the proposition that filing a complaint with the CFPB, as opposed to directly with Trans Union, is not sufficient notice to trigger the actions outlined in section 1681s-2(b) because the CFPB is not a consumer reporting agency. (Def.'s Mem. in Reply [ECF No. 25] at 5-6.) Those cases are distinguishable in that they discuss filing a complaint *with* the CFPB, rather than on a portal *through* the CFPB. It is plausible that, as Plaintiff alleges, the portal served as a conduit to deliver his message directly to Trans Union.

Thus, the Court agrees with Plaintiff's assessment that discovery into how the portal works would be helpful to determine whether Plaintiff's message "through the [CFPB] portal" went directly to Trans Union or if it was lodged first with the CFPB, which later transmitted it to Trans Union. Of course, it is possible that discovery will reveal that Plaintiff's message "through…the portal" was merely a dispute filed *with* the CFPB, as described in the cases Reliant cites. Given the standard applicable at this preliminary stage of the case, however, Plaintiff has sufficiently alleged that he disputed the tradeline directly with Trans Union by way of the CPFB portal. Accordingly, Reliant's motion to dismiss the FCRA claim is denied.

II.  FDCPA

Plaintiff alleges that Reliant "failed to note that the account was disputed in violation of [15 U.S.C. §] 1692e(8) and attempted to [] collect a debt not owed in violation of 1692e." (SAC ¶ 31.) Section 1692e(8) states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt [including] [c]ommunicating or threatening to communicate to any person credit information which is

known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

Reliant argues that it reported the erroneous tradeline before Plaintiff filed a complaint, and as a result, its activity does not fall within the conduct prohibited by the FDCPA. (Def.'s Mem. in Supp. at 6.) Reliant further argues that the FDCPA does not impose an obligation on debt collectors to update a tradeline to note that it has been disputed. (*Id.*) Plaintiff, whose papers are far from a model of clarity, appears to agree that Reliant was not required to update the tradeline to note that it was disputed, but "if it [chose] to report the debt at all, report the debt as disputed." (Pl.'s Mem. in Opp. at 7-8.) Nonetheless, Plaintiff argues that Reliant "reported to [Trans Union] that [P]laintiff's disputed debt was not disputed," and that Reliant attempted to collect the debt after learning of the dispute. (*Id*. at 7.)

Based on the dates of the relevant events, it is difficult to conclude that Reliant reported the tradeline to Trans Union *after* learning the debt was disputed. Plaintiff alleges that he disputed the tradeline through the CFPB in December 2018. (SAC ¶ 2.) Trans Union wrote to Plaintiff on January 18, 2019 saying it asked Reliant to investigate the tradeline, and on January 24, 2019, Reliant sent Plaintiff a letter enclosing "the documentation [Plaintiff] requested regarding the account," indicating a balance of $638.50 owed to Touro College. (*Id.* ¶ 3; SAC Attachment.) At some point before March 28, 2019, the date this action was filed, "the tradeline [was] no longer showing on Plaintiff's Trans Union credit report." (SAC ¶ 8.)

Given this timeline, as alleged in the SAC, it is unclear what communication Plaintiff is referring to when he says that Reliant "reported to [Trans Union] that [P]laintiff's disputed debt was not disputed." (Pl.'s Mem. in Opp. at 7.) Plaintiff points to no communication from Reliant following the dispute, except for the January 24, 2019 letter that Reliant sent to Plaintiff,

seemingly in response to a request from Plaintiff. That, of course, is not a communication to Trans Union.

Furthermore, the disputed debt was removed within, at most, three months of Plaintiff's complaint. Courts have found in a debt collector's favor in similar situations where the disputed debt was deleted shortly after the dispute. *See Luxenburg v. Equifax Credit Info. Servs.*, 2005 WL 78947, at *5 (N.D. Ill. Jan. 12, 2005) (granting summary judgment to debt collector on section 1692e(8) claim where collector deleted account two months after receiving dispute letter); *see also Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 52 (2d Cir. 2018), *cert. denied sub nom. Huebner v. Midland Credit Mgmt.*, 139 S. Ct. 1282, 203 L. Ed. 2d 280 (2019) (affirming summary judgment where debt collector deleted account the day Plaintiff called to dispute it and "sent several messages to the credit reporting agencies telling them to delete the debt."). Thus, the Court finds that Plaintiff has failed to plausibly allege that Reliant violated section 1692e(8) and grants Reliant's motion to dismiss Plaintiff's FDCPA claim.

### III. Leave to Amend

Although Plaintiff has not requested leave to amend, the Court has considered the issue and concludes that it would be futile, particularly because Plaintiff has already twice amended his complaint. *See Jin v. Metro Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002).

### CONCLUSION

Reliant's motion to dismiss is denied as to the FCRA claim and granted as to the FDCPA claim.

**SO ORDERED.**

Dated: Central Islip, New York      s/ Denis R. Hurley
       January 24, 2020                  Denis R. Hurley
                                                 United States District Judge